And we will hear Martinez v. ZoomInfo Technologies next. Thank you. May it please the Court. Jeff Lamkin on behalf of ZoomInfo. If I may, I'd like to reserve four minutes for rebuttal. Plaintiff's theory reduces to this. If a member of the public asks for information about a plaintiff, you can't answer by giving publicly available, non-scandalous, professional information about her, and offer additional information, say that a full directory of additional information is available for free, for a fee or for free. Here, the complaint centers on what happens after and only if a member of the public looks for information for a plaintiff by typing into a search bar her name. If that happens, ZoomInfo will generate a preview profile, send a link, and someone may click on that link and then see her preview profile of publicly available professional information. And it also offers, says, you can obtain additional such information through the polling mechanisms. What plaintiff seeks to do is shut down that conversation, that exchange of information, that inquiry, and that response of public information. In Dex, this court held that even that old, simple phone directory is fully protected by the First Amendment because of the informational value to the public. ZoomInfo's directory of professionals and businesses, those people who make up the economics, the movement of American public life, it's a 21st century version of that, and it is at least as protected as that simple, plain phone book. I appreciate the importance of the issue here, but it seems to me there's two issues that neither party focused on extensively. First, the standing issue, which you do argue, and then second, the exemptions from coverage under the Anti-SLAPP Act. So let me start with standing. And my question is, after TransUnion, the Ninth Circuit had the Wakefield case and basically said TransUnion reinforced this notion that if you have a statutory claim by the legislature, in that case federal, but it could be state, that you do have standing to bring a claim under that if there's a common law analog. Why wouldn't that apply here? Yeah, so there's two things that are missing here. One, you have to have the common law analog for the injury, something that goes back to the time of framing that the courts would have recognized as the type of injury that somebody can assert in court, so you don't have abstract disputes. And here there's nothing like that at the common law, where plaintiff here doesn't, they're grabbing her complaint, isn't that in the database or in this directory that we have her information there. Her concern is that if someone types in the search, then they may receive that information together with what she deems an advertisement. But that's not imminent or actual injury. That's not a harm, because that may never occur. And there's no evidence that anybody's ever typed in her name and seen that result, or that anybody imminently will. So that imminent or actual is still missing. And in terms of, even today, under the modern doctrine of right of publicity, you still need some sort of actual injury. There's a case called Slavinsky, where you have to have some harm, like it has to cause humiliation, embarrassment, outrage. We're at the stage, though, what about her complaint and what did she allege? She alleges that she was, I think the phrase is, that she was worried, uncertain, and concerned. And why isn't that enough when she's alleging the allegations that she has here? This is, of course, different than Spokio. We're talking about misappropriation. That's what I understand her position to be. And then under the California statute. So I don't see your argument here. And then going back, I think you're saying common law, so you're taking the position, going back to the beginning when the Constitution was ratified. Is that what you're saying? Right. When the Constitution was ratified, that's not the type of harm you could have had. And in addition, even under Slavinsky, which is a California state decision, you have to have some concrete injury. And there's four different circuits that say just worry or uncertainty or concern aren't sufficient. In this context, though, for misappropriation? No, not just generally, but misappropriation, Slavinsky says that you actually have to have a concrete injury, like a loss of value. Or, and Guglielmi says this, you have to have something along the lines of embarrassment, humiliation, outrage. This would turn standing on its head. She didn't use those words. She didn't use the word embarrassment, but very close to it. I suppose if we did a, we looked in the dictionary, we might find that it was precisely, the words she used were precisely that, which is embarrassment. No, Your Honor, I think that it couldn't possibly be that sort of embarrassment, because remember, this is all information that's public already. It's hard to see how you can be embarrassed about that. And she doesn't say embarrassment because, in addition, you have a right, this is at ER 20-21, to opt out. If you don't want your information on ZoomInfo, all you do is opt out, and it's not there anymore. So they really couldn't allege that type of outrage, harm, and embarrassment. But it's very hard to understand her injury. It's true. Because the preview is public, and as you've indicated, she's not really complaining about the preview information and not exactly complaining about what might pop up in the database. I think her complaint is that you're leveraging her data for commercial purposes. If that is the essence of her complaint, and it may or may not have legs on the merits, would that be enough? No, Your Honor, because if you went back to the framing, you would not find leveraging somebody's persona, leveraging somebody's information for commercial benefit as the type of injury. She would have to show something that causes real, genuine, and the term the Supreme Court uses is concrete injury to her. So let me ask you, in Batzel, this court declined to hear a collateral appeal of the denial of a motion to dismiss for lack of personal jurisdiction. Why should we treat denials of motions to dismiss for lack of standing differently when both issues go to the court's jurisdiction? Well, one goes to the power of the court and subject matter jurisdiction. And as this court explained in Safari Club and Melendrez, pendant jurisdiction goes to anything that's necessary to address the court's power to issue a ruling. And this court always has jurisdiction to address its jurisdiction. So if there's no standing, there's no case or controversy. And this court simply doesn't have authority to issue a merits ruling, and likewise the court below didn't have authority to issue a ruling either. And so this is the type of thing that Safari Club said the court would have a duty to address. I was trying to look for cases where, and I found maybe one in the Ninth Circuit, where it came up on a collateral appeal on a different issue, but then whether standing kind of per force was kind of encompassed. But I thought maybe the Vermont agency out of the Supreme Court, although they didn't articulate it, that's a statutory immunity that came up, Eleventh Amendment statutory immunity. They reach standing. Do you know of any other cases that encompass this kind of dual, as you say, the power of the court? Well, certainly I think Safari Club does that. Melendrez does it as well. And I think even in that case that you were talking about, Your Honor, they reach standing, which was one jurisdictional issue, instead of the Eleventh Amendment immunity, which was another jurisdictional issue. And you don't have to hat-pick one jurisdictional over another, but when it goes to the power of the court, subject matter jurisdiction, do I have a case or constancy before me? The court has to address it. And in this case, because the injury she's complaining of, the notion that her information may appear alongside what she calls an advertisement, won't occur unless some third party types in a search, and there's no allegation, any facts that it's imminent, likely, or has ever happened by anybody or lawyer. That's like transunion. Yeah. Correct me if I'm wrong here, but basically these corporations or commercial establishments have to pay $10,000 for this. Correct? There's also a community edition, Your Honor, which is available for free. But if they pay $10,000, as opposed to that, they're going to, obviously, it seems to me, if you want to stay in business, you're going to use that for commercial purposes. So I thought I read in the record there's something like they have 125 million potential people, the subscribers, so if they pay $10,000, that means her name, her background, is worth something, maybe a very minimal amount, if we do the math. But still, it's worth something, isn't it? No, Your Honor, I think the phone book is comprehensive. It has everybody in it. Your reporting agency has everybody in it. But that's not because any other piece of data is. Don't you agree that the corporations that are purchasing this, it isn't handed out free? Maybe you've got a basis to do so, but they're paying $10,000 for this information. Or the community edition is free. And the comprehensiveness of it, the fact that it is a compilation, a curation, and it's organized for people to access it, that's what creates the value. The fact that the phone book has everybody's name in it doesn't mean that any of those names actually has value. It simply means that the compilation has value. But then why would they purchase it for $10,000? Well, Your Honor, I think any compilation like that may have value because it's curated. It has value because they're going to use it for commercial purposes. But it doesn't mean that any individual thing, that any person has bought it because or values or thinks that her particular name has value, it's because it's a compilation, because it's organized and because it's available. Are you challenging the language that advertises to a viewer that they can get more information if they pay $10,000 to subscribe? That's exactly right. But, again, returning to standing, for example, that may never – Well, I'm asking this question because I'm interested in the commercial speech exception that I know Judge McKeown referenced sort of in her initial question. But how is it not commercial speech to advertise to viewers that if you pay $10,000, you can get more information? Right. And so the answer comes in two parts. The first is that for the anti-SLAPP statute, it doesn't matter, because what it protects are acts in furtherance of First Amendment rights. And so the First Amendment right here is to have a directory, and any act in furtherance of that, including promoting it, is protected under the anti-SLAPP statute. It divides it into two parts. And Dex shows that the directory itself is First Amendment protected, just like the phone book. And, second, there's cases like Scheer, like Charles, like Guglielmi, that make clear that if you have a protected First Amendment work, a First Amendment protected entity thing, you are allowed to promote that, and that promotion of it gets exactly the same protection as the protected First Amendment work against tort suits. And the reason is this. A right to have books and sell books would be very meaningless if you couldn't tell people that the books are there, what's in them, how they can get them. For that reason, court after court, this court included in Guglielmi and Charles and Scheer, said that when you have a First Amendment protected work, the promotion of that work, the truth of promotion, gets the exact same protection of tort as the underlying work. What is their best case that establishes that the anti-SLAPP law should apply here? Because as I have read some of the cases, and certainly you may know many more of them, what is your best case? Because I see them as the ones I have read as being designed to eliminate frivolous cases where plaintiffs are forced to, or defendants are forced to, litigate something where there is no basis. And that's why I'm asking these questions. They don't seem to fall within the parameters of those cases, such as one that somebody cited is the one where you had a journalist who was sued for defamation, and clearly there was no basis for defamation. So the court applied the anti-SLAPP law. So how does that fit into that general category of those types of cases that are really frivolous? California, the very first section, Section Sub A, says that this is to be read broadly. And California went back and amended the statute. What's your best case that's like the ones that your client needs so much protection because of this particular lawsuit? It's just so frivolous, and there is no basis for it. Well, certainly cases like Dora and Nygaard are cases where, for example, it was about a Finnish businessman and his estate in the Bahamas. That's just simply not nearly as important as this directory that's basically the who's who, the statutory to Britannica, who's important of American commerce. And California re-enacted the statute to overturn cases that had read this narrowly to me, and it has to be of political concern and things like that. The literal terms of the statute say acts in furtherance of a First Amendment right. If telling people about a directory, answering a question about what's in the directory, telling them that this information is in the directory and where they can get more, isn't protected by the First Amendment, it's hard to tell what is. I feel I'm running out of time. I apologize. That actually speaks to whether the action could potentially come under the anti-SLAPP because it's free speech in furtherance of a public issue. But then we have the exemptions. So two questions for you on that. In your view, should we look at the exemptions first? Because if one of those applies, game over at this stage. And why doesn't the exemption that this case was brought wholly in the public interest exempt the case? Because that seems to me to be one where both sides don't spend much time on it, but it could be dispositive. Yes, Your Honor. So if you're asking first about subsection E that says, if the district court invokes one of those exceptions, then you don't get appeal, that doesn't apply because the district court didn't invoke either. Okay, I started there. But then I went and looked at cases and it looked like California is not consistent in that, even if the exemption wasn't implied by the district court. So let's say we agree with you on anti-SLAPP is covered. You're saying they should go back to the district court? No, Your Honor, I don't think either of those apply. For the subsection B, which is one you said that was solely in the public interest, California law is very clear that it covers, it doesn't apply when a plaintiff seeks their own damages. And here, if you look at Excerpts of Record 168, she clearly seeks her own damages, her own emotional distress, which would be naturally individual. And so for that reason, it isn't strictly in the public interest like an attorney general suit. It is something where she'd be seeking her own individual damages, and therefore it falls outside the exception under cases. Well, this is sort of a damned if you do, damned if you don't, because if she doesn't allege something, she's not going to get past standing. And so I read her allegations as being framed on behalf of the class, and then she asks for damages, misuse, punitives, you know, all kind of other things. And then on the common law claim, same thing, royalties. But she's asking on behalf of the class. So is she asking for anything that the class can't get? Yes, and that would be the individual damages, the harm from her. If you look at page 164 when she's talking about what's common to the class, what she doesn't talk is actual damages being common to the class. So since she's claiming actual value to her, she doesn't have alleged facts for it. But if any value of her name compared to the value of other names, and this is somebody who's the political and legislative director of a public employee union, something that's sort of laden with the public interest, that would be unique to her and different for her. And likewise, she says emotional damage. That's going to be different for each of the different plaintiffs. And since she's seeking relief that is unique to her, that's different for her, she doesn't fall within the exception of 421.17b, 425.17b. Yeah, I mean, because in some respects it seems to me to bring a class action that you are really, she's bringing the public interest, and that's different than an individual who's sued for defamation and invokes the anti-SLAPP because it's a one-on-one. Well, as the claim stands now, it's not a class action. We don't have a certified class. I understand, but the allegations. The allegations are that she would like to be a representative of a class, but in that class action she would be receiving her own individual damages because her emotional distress is not the same of every class member's. Her supposed value of her name is not going to be the same. She's a different person. Why wouldn't it be? Pardon? Well, you're not at the stage where the court has certified the class yet. No, we aren't. Am I wrong? Has there been discovery on whether or not there's sufficient people, there are common interests? No, we haven't gotten to that point. Okay. We take it on the complaint, and the complaint at paragraph 164, or excuse me, on page 164 of the excerpt of the record, doesn't list damages, actual damages, something that's common across the class. Yet she alleges and seeks her actual damages. Okay. So back to that, let me just finish this with, in TransUnion, the Supreme Court said that it recognizes that inclusion upon seclusion is a sufficient harm. So why isn't that what she's alleged here, her mental injuries, why isn't that enough under the California law? In particular, we're talking about California law. We're not talking about state law. I mean, we're not talking about federal law. Yes, because this information is public all the way down. It's the same information that's on her LinkedIn profile, it's on her employer's profile. This isn't the intrusion on inclusion like private facts. The allegation here is that she has a- She's saying they're private. She's saying they're private, and she has alleged that in her complaint. So private- And she says that it's intrusion on her privacy, and mental injuries as a consequence of that. We have to take that as true at this point, don't we? I mean, it's in the complaint. If it wasn't in the complaint, I would agree with you. So that legal conclusion that it is privacy is not something the court takes as true. The court takes factual allegations as true. And the facts here- But the facts are alleged in the complaint at this point. We take that as true. And if the Supreme Court has said in the TransUnion case that intrusion upon seclusion is sufficient harm, isn't that what she's alleged? We're not at the stage whether we're dealing with a class action or whether a CAFA action is appropriate. Right. Your Honor, if the court looks at the excerpts of record which show what's in, and there's been no argument that the court can't take judicial notice of, what's in her employer's website, what she has posted to her own LinkedIn, there is no more information in her preview profile than in theirs. Her LinkedIn and her employer's website are far more, far more extensive. It's just impossible to have the notion that she somehow has an intrusion on inclusion, intrusion on her seclusion, where she herself- So we're supposed to say that what she has alleged is false? No. The legal conclusion that it's- It can never- What she's alleged, that she's had harm, mental harm, is not something this court can take account of. So, Your Honor, mental harm is a legal conclusion. What you need are facts. And when she says privacy, what you need are facts. And the facts, allegedly, nowhere show- Should she be allowed- Let's assume we grant and say that there isn't enough to establish standing. Should she be allowed, if we were to reverse it, to amend? Because that seems what you're asking for, is that we hold there's no standing. But why shouldn't she be allowed, as in many of these cases, to amend? Right. So if she had wanted leave to amend, there would be a requirement that she ask for leave to amend below. And, frankly, I don't think she can amend to show anything more than she alleged, because if there was actual injury here, if there's an intrusion on her seclusion, she would have used, that's EDR 2021- You're assuming- That opt out. She would- You're assuming that, counsel, aren't you? No, Your Honor. I think this is the type of thing where if they had thought they could allege more, they would have asked for leave to amend. That's a typical requirement. Well, we need to have one plaintiff withstanding. What if she goes back and amends, and they find somebody who's not a public persona, more or less like her, but just some individual where- Well, that would be a separate- If they found somebody that had standing, could allege injury, in fact, that would be a new lawsuit. But a class action complaint isn't sort of like a dance card where you can swap in new people for it. That would require- No, you can. I mean, you can- A lot of times they swap in new representative plaintiffs in a class action. That would be fine if the case isn't dismissed. But when you have a plaintiff that has standing, it's the only plaintiff before you, the court has no ability to do anything other than say you do not have standing, the case must be dismissed. If there's no standing, there's no case or controversy and no way to go further in the ruling. Could she file this in state court if we dismiss it? Pardon? Could she file it in state court? I don't think she could for two distinct reasons. First is that, as I said, the misappropriation tort itself under California law, and there's a case called Savinsky. The sign of Kwanon for that is some sort of a concrete injury, that sort of humiliation which she hasn't alleged, if you're going the emotional side, or you have to have an economic injury of some sort. There's no allegation here of any facts that shows that there was a value in her persona before and that she somehow has lost any value in her persona as a result. But also she would also end up losing on the merits, Your Honor. This is precisely the type of thing. Someone asks for information, you provide the information, and you tell them where they can get more. That's exactly what the First Amendment protects. Okay, counsel. You're out of time, but we will give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Benjamin Osborne on behalf of the plaintiff. May it please the Court. Ms. Martinez sued ZoomInfo because ZoomInfo uses her name and persona to advertise a $10,000 subscription service. One fact I want to make sure doesn't get lost is that the subscription service is not just directory information. It also includes what ZoomInfo calls intent data, and that's information about what individuals search for online. Is that in the record? Yes. It's called intent data. It's referred to in our answering brief. It also appears in the complaint. And that complaint is quoting to ZoomInfo's own promotional material, which states that a purchaser of the subscription will be able to see what the people they want to monitor are searching for online. And the reason is simple. It's because ZoomInfo's service is brought by salespeople, and they want to know the right person to reach out to someone like Ms. Martinez with a pitch. And, of course, that's the most efficient when they know Ms. Martinez has been searching for something relevant. But I want to be sure we know that their service goes well beyond a directory. Now, this case is before this court on appeal because the district court denied an anti-slap motion. So I'll talk about the anti-slap motion first, and then I'll move on to standing. Why don't you start with standing? Because if there's no standing, I don't think the other thing would matter. Well, fair enough, although there is a question in this case around whether the standing issue is even properly presented before this court. Okay, well, I don't want to talk about that, because I don't see why it wouldn't be. It's kind of part and parcel of the order. That's one option. And the other is that standing is always before the court. So maybe talk first about the procedural posture and then the merits of standing. Sure. So I would probably push back a bit on your first point, that it's part of the same order. It's two different orders. That they appear in the same document doesn't make them the same order. Right? There's an order denying the anti-slap motion, and the judge chose to include in the same document an order denying the 12B6 motion. But the order that's on appeal is only the anti-slap motion. And you'll see that if you look at their notice of appeal. It says nothing about standing, and it says nothing about the 12B6 order. So that's procedural posture. As to whether standing in this case is intertwined with the order that's on appeal, and that's the relevant standard, by the way, in both the cases they cite and ours. You can go to the — this court can address a jurisdictional issue if it's intertwined with the issue that's on interlocutory appeal. Right? So that's the question. And I think here it's pretty clear the court can resolve the anti-slap issue without looking at whether the district court has jurisdiction to hear the plaintiff's claim. Right? The anti-slap motion centers around whether the defendant has shown that the case arises from speech in connection with a public issue. That's conceptually distinct from whether the plaintiff has suffered injury that allows her to bring a complaint in the first place. And there's case law to support this. There's BATSL, which declined to hear a jurisdictional issue after an anti-slap denial. And there's the — I believe it's the Hilton case, which declined to hear a First Amendment issue after an anti-slap denial. Isn't the BATSL issue, though, controversial in this circuit? There's another piece of BATSL that is controversial in this circuit, which is whether interlocutory appeal should be allowed at all. And we cited in our answering brief a lot of the opinions from judges of this court saying that interlocutory appeal shouldn't be allowed in the first place. But the piece of BATSL we're talking about now, which is whether you get pending jurisdiction over a jurisdictional issue that has nothing to do with the anti-slap motion, is not controversial as far as I'm aware. I haven't seen any cases that it's controversial. Then there's this — maybe there's no definitive answer, but in the Lee case, 260F3997, they say, before considering whether we're required to oust from federal court causes of action that are indisputably within our statutory and constitutional jurisdiction, we should determine whether there's any need to consider that at all. Because although the standing question was not expressly certified to the court, we have interlocutory jurisdiction to decide all questions fairly raised by the orders under review. So the question is, why wouldn't standing be fairly raised for the Lee case? Well, I think Lee is stating the same standard, basically, right? Is it fairly raised? And the answer is no. The question you have to answer, I think, is can you address the anti-slap motion, right? The question of whether Zoom info has shown this case arises from speech in connection with a public issue without asking the question of whether and what kind of injury plaintiff alleged. Well, you can do that in almost every interlocutory appeal, but if there's no jurisdiction, why would we be addressing that question? Well, I suppose that's a question you'd have to refer to the Ninth Circuit. Sorry, to yourselves. I understand. But we cite the law in our brief where the defendant's position is essentially that on any interlocutory appeal, the court should address standing, right? That cannot be reconciled with the case law. We cite many cases in which the Ninth Circuit declined to hear the issue, declined to hear jurisdictional issues, including the issue of standing, right, on interlocutory appeal. We have qualified immunity decisions. We have sovereign immunity decisions. That's Cacera versus Spain. That's Ng versus Cooley. There's also the Sierra National case that we cite that falls into that same category. And then even on the cases they cite on their side, for example, Melendrez versus Arpaio, in Melendrez, this court declined to hear some standing issues, right? There were two issues relevant to standing that Arpaio declined to hear because they said, we can resolve the other issue without looking at the standing question. Yes, it said yes to considering one standing issue, but that's because that specific issue was intertwined with the order that was on appeal. So it's the same standard all the way through. Is it intertwined with the order that's on appeal? If you can resolve the anti-SLAPP motion, whether by finding that one or both of the exceptions applies, or by finding they haven't shown speech in connection with a public issue, or indeed by finding that we've shown the minimal merit required at the second prong, if you can do any of those things, you don't need to address standing at this stage. Now, I'm not saying that because we want to avoid the standing issue. We're quite confident there is standing in this case. So I will proceed to that point now. Although I'm going to flag that I want to come back to anti-SLAPP because I want to talk about the exceptions. But let's proceed to standing now. So I think the standing inquiry here is straightforward under TransUnion. There's a common law analog to the statutory right of publicity, and we've shown exactly the kind of harm that for over a century has been recognized as given law to a misappropriation claim. And that's in your complaint? Yes. Well, the harms are in the complaint, not the legal point around the connection. That's what I'm saying. We're talking about when we talk about standing, we look at what's in the complaint to establish standing. Assuming you're at that point now where you're now going to try to establish there is standing. We look to the complaint, don't we? Yes. You look at whether the complaint alleges the types of harms that are required. Allegations in the complaint establish standing. Yes. They allege both mental injury on behalf of Ms. Martinez and economic injury through the unjust cause. How can that be when there's been no evidence that anyone outside she and her counsel have accessed this? Is that a lot like the transunion people where that class of people who worried that they might send out their information, but they haven't? So how does she get by that hurdle? Right. So I have several answers on that point. So first, we have alleged that her profile has been viewed. It's in the complaint, right? We allege that it's publicly, to be very precise about what we allege, we allege that her name and profile, teaser profile, is publicly available. If you type in her name into any Internet browser, it pops right up. And we also allege, based on Zoom Info's own statements in their 10-K, that they rely on teaser profiles like Ms. Martinez to sell the majority of the subscriptions they sell. Okay. And those are your allegations in the complaint itself? Relative to the question, to the very specific question of whether any third party other than plaintiff's attorneys viewed the profile in question. So your position is it doesn't matter that nobody has accessed it. There is the prospect. That's one of our positions. Right now I'm saying we did allege someone. And then the question then is, is that too speculative or not? And I assume you'd say, no, that's not speculative. Somebody might. That's right. And it's concrete or imminent, right? So the imminence is, I think, shown by the fact that her profile is publicly distributed, right? I want to pause on that point because in TransUnion what you had were credit reports that were only distributed upon request to paying subscribers. The teaser profiles in this case are publicly disseminated right now. They're only available if you ask for them. That's not true. There's a URL right now on the Internet that is everyone's teaser profile. Are you saying that the fact that it's published in and of itself is the injury or is it the advertisement? Well, the publication of the advertisement, those two things together. Yes. That is a commercial use of someone's name and likeness without their permission. Now, we do have to show that there's – And tell me again, remind me, in the publication as the commercial use, what is it stated in the complaint? Best as you can recall. Yes. We allege that Ms. Martinez's teaser profile is publicly searchable. It's publicly findable on the Internet. And we allege that if you look at the content of that teaser profile, it includes – it obviously refers to her name and persona, which is one element of the claim, and it includes advertising statements. There's a button saying, click here to get more access to Kim's info. And if you click that, it will bring you to a landing page that says you've got to pay $10,000 to get both the information we redacted on the profile. Well, that pops up immediately. Yes. And that's alleged in the complaint as well. But you're not complaining about the fact that there's a teaser profile, are you? Yes, we are. Well, we're complaining. Your brief kind of goes back and forth on that. So the teaser profile is public information. Do you agree with that? No. I'm talking about the button as people talk about it, but the profile. So two answers to that. One, no, it's not public information, or at least we don't know at this point whether it's public information. What we allege in the complaint was ZoomInfo's general statements about how it gets the information in the teaser profiles. ZoomInfo, you'll see this in the complaint, identified two sources, one of which was paying. . . And I have a very simple question. So instead of two and three-part answers, do you dispute that her information, her teaser information, is nonpublic? We don't know. Also, it doesn't matter. I'm not asking whether it matters. I'm asking what your position is and where is that in the complaint. We in the complaint allege that we don't know how ZoomInfo got the information that's in the teaser profile. And then further, that the way ZoomInfo gets the information in teaser profiles is through two sources. One is by paying third-party data suppliers. The other is through its Community Edition, which is a tool it uses to scrape information from private emails. We don't know whether the information in Ms. Martinez's profile came from that private email scraping or from some other source. But it doesn't matter for the purposes of stating an injury to the right of publicity or misappropriation of name or likeness whether the underlying information was private. That's a fundamental misconception, especially in Spokio's brief. Not a single misappropriation or right of publicity case has ever involved nonpublic information, right? The term privacy is perhaps a little bit unfortunate because it makes us think that information has to be secret before a privacy violation can occur. But that is not the essence of a misappropriation claim. Look at the very first case that is cited in either party's brief in terms of timeline for the right of publicity. It's called Manola. It was about an actress who gave a public performance on stage. And someone in the audience captured a photograph of Ms. Manola and used it to advertise a product without her consent. That was injury. That was offense to her dignity. There was nothing private about her performance. In fact, she willingly went on stage. The point is that the right of publicity and the tort of misappropriation give you a degree of control over how your name and likeness will be used. In fact, I flip it exactly the other way. The purpose of the tort is to ensure that individuals can place their names and likenesses in the public sphere with the comfort and the knowledge that it won't be used, captured, and taken for a commercial purpose that they did not intend. And so at this point, with two minutes remaining, I'd like to return to the anti-SLAPP portion. And on that point, let's start with the exceptions. You're right, we didn't spend a ton of time in our brief on it, but there are two exceptions that we do describe in the brief, both of which apply here. Do you think that we can apply them here even if the district court didn't address them? Yes. And furthermore, if they do apply, then I think that probably means you don't have jurisdiction to hear any of the rest of the appeal because interlocutory appeal is unavailable if either of those exceptions apply under the anti-SLAPP statute. Well, the interlocutory appeal is unavailable if the district court were to apply any of the exceptions. But on appeal, I'm not sure that we would lose jurisdiction immediately simply because we're applying one of the exceptions. That's a fair point, and to be honest, I haven't considered that twist on it. But certainly, applying either of those exceptions could constitute an independent basis for you to affirm the district court's ruling on the anti-SLAPP motion. So let's start with the suit in the public interest. So here we cite Smith v. Levinson, which was a class action alleging monetary damages on behalf of an entire class. It's okay that the plaintiff is asking for monetary damages. The question is whether the damages she's asking for are different from those she's searching for on behalf of the class. Here, we have a statutory damages provision. Plaintiff is seeking exactly the same remedy, both in terms of damages and in terms of any injunctive relief for herself that she does on behalf of the entire class. That's why the suit in public interest exception applies. Is she seeking damages for emotional distress and the worrying and the other things that you say give her standing? Yes, but the California statute provides for statutory minimum damages precisely because it's often difficult to prove in an exact monetary amount how that dignitary harm should be compensated. So are you saying that she would be limited to the statutory damages because otherwise she would be asking for certain individual damages related to emotional distress? Your Honor, I don't think that's the case. I think if you read Smith v. Levinson, Smith v. Levinson says very precisely it's okay if class members are receiving different damages as long as the theory is correct and the monetary damages are not of a different kind. But this is an easier case than Smith because everyone in the class would be entitled to the same damages. And with 20 seconds remaining, or actually I'm over my time, I believe. You took 10 seconds to wrap up. Oh, okay. Well, I've actually said everything that I wish to say. Thank you. All right, even better. Thank you. Thank you, Your Honor. I'd like to start by pointing out that there's no requirement that the suit be frivolous for you to have an anti-SLAPP action. That's this court's planned parenthood decision. It doesn't have to be frivolous. I'm just saying. And the whole idea behind it is that you don't chill First Amendment rights by subjecting people to these costly suits and the prospect of enormous damages. You get it sorted out early through things like the immediate appeal that it provides. The section is on the exceptions to, for example, Section 17C. I would point the court to the Ingalls decision and the club members' decision from the California Supreme Court, which would be authoritative. And they make clear that that's for when you have a private attorney general suit where you have an uninjured plaintiff who is seeking relief on behalf of a whole class, like what we call a B-2 class, an injunctive relief class. Once the plaintiff is seeking relief on their own behalf by its terms and you're seeking individual relief, that exception doesn't apply. And finally, there's simply no commercial speech exception to the First Amendment protections the anti-SLAPP suit provides. It reaches all conduct in furtherance of First Amendment rights in connection with the public issue. And that includes, in this case called City of Montebello, it includes conduct that isn't in itself protected by the First Amendment. But here we have core First Amendment conduct, which is someone asks a question, I would like information about this person. You give them the response. Here's the information. And you tell them that the information is in your book or in your directory. And you say how to get more. That is right at the center of what the First Amendment allows. It would be pointless to have these directories if you could never tell anybody about them and what's in them and answer the question. Do you have that information? Yes, we have that information. Let me just ask you, the California attorney general hasn't interceded here to bring such a suit, but why isn't she standing as a citizen more or less in the shoes of the public interest? Right. If she were not seeking individual relief, no money for herself, then that would be like an attorney general suit. You would be seeking what we would call B-2 class relief, relief for the class that is injunctive only, and it wouldn't be giving you individual damages. But once she's seeking her individual damages, her emotional distress or something like that, that takes you right outside of that exception. And I would point out that club members and this case called Ingalls are authoritative because club members is the California Supreme Court speaking, not a lower court. And Ingalls has very good analysis of that. And I look at Ingalls and club members. But does it say that to be a private attorney general, to bring a case as a private attorney general under that doctrine, that you can't allege any actual personal injury? No, it says that you cannot be seeking individual relief. You cannot be seeking relief on your own behalf. It has to be relief on behalf of the class because it's akin to purely in the public interest, purely for the benefit of society, not for the benefit of yourself. I just have some problem with that because if she rolls in here with an allegation that says, I'm here as a private attorney general, and we want relief for everyone who's been subjected to the Zoom info previews and profiles, then you would say, well, she doesn't have any standing because she hasn't shown that she has had any damage. Well, if she were not seeking anything except she had actually, this actually had happened to her, in other words, her profile were actually generated. There's no allegation that it was generated. It was actually sent out, and then somebody saw it. It was actually viewed. This is a lot like TransUnion because none of these events have happened to all require some third party to do something that may never happen. But if she alleged that, and it was likely to happen again, harm was imminent, she would be seeking injunctive relief on behalf of a class and just injunctive relief on behalf of a class. She wouldn't have to ask her own individual. But you're saying not only does it have to be without any damage to her, and it has to be brought under the private attorney general doctrine, but it also only has to seek injunctive relief. These are requirements that I'm not seeing anymore. If there's class-wide relief that is not in any way beneficial to her so that she's not seeking her own individual emotional harm, which would be different from other people's emotional harms, that might be available as well. But we do know that when Ingalls talks about this, it talks about seeking relief that's not personal to you, but instead is just relief for the entire class from which you're an undifferentiated participant, an undifferentiated representative. If there are no further questions. Thank you, Your Honor. We ask that you be released.
judges: McKEOWN, DESAI, Silver